HEARD APRIL TERM, 1873.

## WILSON *vs.* HYATT, McBURNEY & Co.

One claiming the legal title to land cannot, on the mere ground that he is the legal owner, maintain a bill in equity to enjoin its sale by the Sheriff under execution, as the property of another; nor does it make any difference, it seems, that the plaintiff in the bill is the executrix of the debtor, as whose property the land was levied on, and the execution is against herself as executrix.

Under the former practice of the Court only such relief would be granted, under the general prayer for relief, as the case stated in the bill would justify.

BEFORE GRAHAM, J., AT CHARLESTON, MAY TERM, 1872.

Bill in equity filed by Jane C. Wilson and Frances L. Wilson against Hyatt, McBurney & Co. The case is stated in the decree of the Circuit Judge, which is as follows:

GRAHAM, J. It appears from the records of these cases, the execution upon the judgment in the former, of which the bill in the latter (under the old equity practice) was filed to enjoin, and from the report of the Referee in the former, that John Wilson, the husband of Frances L. Wilson, in his lifetime, was indebted to Hyatt, McBurney & Co. for certain goods sold to him, upon which suit was brought against him in 1860, but abated by his death; and, from the report of the Referee in the latter, that in 1867 Frances Wilson, the executrix, by a deed reciting her power under his will to sell any part of his real estate to pay debts, or for the purpose of changing investment, and her willingness to become the purchaser of certain parts of the real estate for the sum of ten thousand dollars ($10,000) in cash, which sum exceeded the assessed and actual value of the said real estate, conveyed the property afterwards levied upon, and the title to which is the subject of this suit, to her daughter, Jane C. Wilson, her heirs and assigns forever, *in trust, nevertheless, to and for the use of the said Frances L. Wilson, her heirs and assigns forever,* and to convey the said premises to the said Frances L. Wilson, whenever thereunto by her required, and that on the same day the said Jane C. Wilson re-conveyed the premises to Frances L. Wilson in fee simple.

That on the third day of January, 1868, suit was instituted by Hyatt, McBurney & Co. against Frances L. Wilson, as executrix, and judgment obtained thereon on the 9th of July, 1869. By the report of the Referee in the suit of Hyatt, McBurney & Co., against Mrs. Wilson, as executrix, it appears that Mrs. Wilson was the

agent of her husband in his business, and had full knowledge of this debt, and that no plea of *plene administravit* was filed.  Execution was issued on the 16th of July, and under it the premises in question were levied upon as the property of John Wilson, in the hands of his executrix, and advertised for sale.

On the 19th of November Jane C. Wilson and Frances L. Wilson filed their bill in equity, stating the execution of the deeds, as above, and also that the said Frances L. Wilson, finding herself unable to pay the said $10,000, the consideration for which the deed to herself purported to have been made, and for which she had, at the time, given her note, and which money she expected to have received from her separate and individual estate, at the request of Jane C. Wilson, and to discharge the said note, she had, on the 17th of July, 1869, (which, it will be observed, was the day after the date of the execution,) re-conveyed the premises to the said Jane C. Wilson and her sister, Amelia M. A. Wilson.  Upon the filing of this bill a temporary injunction until the coming in of the answer of Hyatt, McBurney & Co., was granted by the Hon. R. B. Carpenter, then Judge of this Circuit, and upon the filing of the answer, December 28th, 1869, an order of reference was made to W. J. Gayer, Esq.

It should be observed that, on the ————— day of June, 1868, Frances L. Wilson executed a bond and mortgage of the premises to Jane C. Wilson, for herself and her sister, A. M. A. Wilson, but the mortgage was not put on record.

References were had before Mr. Gayer, at which Mrs. Wilson and her daughter testified, their testimony being directed almost entirely to explain how it was that Jane C. Wilson, the daughter, had the means to lend her mother the $10,000 in specie in 1864.  Their story is most remarkable—viz: That the father of Mrs. Wilson, who lived somewhere near Liverpool, having disinherited her on account of her marriage, and who died some time in 1858 or 1859, left, by his will, some $10,000 in gold to Jane C. Wilson, a daughter of Mrs. Wilson, and his grand-daughter; that an uncle, George Elford, ran the blockade in 1864, brought her this money, took it to Abbeville, and there paid it to her; that she lent it to her mother to pay her father's debts ; that Mrs. Wilson, as executrix, paid two notes of John Wilson with this money, "one for $5,000, and one for $6,000, in gold; the one payable to John Mullins, and the other to William Mullins;" that Messrs. John and William Mullins were

English gentlemen; that Mr. John Mullins died, as Mr. Wilson had heard, in Nassau, in 1864, and that Mr. William Mullins is in England. This testimony was taken on the 19th of April, 1870, but no report was filed by the Referee until the 17th of May, 1872, when the case came up before me. The counsel for the complainants, the Wilsons, then objected to it because the Referee had not reported upon the facts, as directed, and under the order of reference I required another report. This second report was filed on the 31st of May, 1872, on which day the case again came up before me. The counsel for Messrs. Hyatt, McBurney & Co., while saying at the bar that there was little or nothing in the report to which he objected, claimed that the decision of a Referee is always open to review upon the facts in this Court, without any exception taken, and the Court should always look into the evidence, if questions were raised, to see whether there is evidence to support the facts, or any of them, as found by the Referee, and that no exceptions is necessary in order that the questions may be raised, and referred to the case of *Liflee* vs. *Field*, 50 Barb., N. Y., 410, in support of this position. On the other hand, the counsel for complainant contended that unless exceptions are filed the findings of the Referee cannot be questioned. The counsel for Hyatt, McBurney & Co. then offered to file the following formal exceptions, to wit:

The defendants in this case except to the report of the Referee, because—

1. He finds that the premises in question were sold " by the said Frances L. Wilson to the said Jane C. Wilson, etc.

" Whereas, it is submitted that no consideration whatsoever is proved to have been passed, and that, in fact, none ever did pass, and that the record and evidence reported shows that the conveyances from the said Frances L. Wilson to the said Jane C. Wilson, and from the said Jane C. Wilson to the said Frances L. Wilson, were made in attempt to defraud the said Hyatt, McBurney & Co., and other creditors of the said John Wilson.

2. " Because the report of the Referee, as far as it sustains the said sale and conveyance by the said Frances L. Wilson, executrix, to the said Jane C. Wilson, and the re-conveyance of the said Jane C. Wilson to the said Frances L. Wilson, is contrary to the law and evidence in the case."

To which the counsel for Mrs. Wilson and her daughter objected that it was too late to do so after argument on the merits. The

view I have taken of the report and of the case, as presented, does not require me to decide this point of practice, but I will only observe that it was the duty of the complainant to have speeded the cause, and as the report of the Referee was only filed on the morning of the hearing, after more than two years of reference, it would be hard to hold the defendants to its strict letter, if such be the rule in this Court.

The Referee finds the facts that Mrs. Frances L. Wilson was appointed executrix of John Wilson, and that by his will she was authorized to sell his property, real or personal, to pay debts or change investment. He also finds the execution of the deeds above mentioned, and that the property intended to be conveyed by them was a portion of the estate of the testator; that the money for its purchase, it seems, was advanced as a loan to Frances L. Wilson, who testified that it was used to pay and satisfy the debts outstanding against the estate of the testator. The burden of proof rested entirely upon the complainants, and it is remarkable that during the two years while the references were open no effort appears to have been made by them to corroborate it, either by proof from England that such a person as James Elford ever lived, or that, dying, he left such a will as alleged. The will was a matter of record, if existing, and six weeks or two months would have sufficed for its production. So, too, as to the destruction of the notes which she claims to have paid. Mr. Buist, the Judge of Probate, has been within Mrs. Wilson's reach from the time she testified to the present, and it is singular that he was not introduced to prove that he had advised her that she might safely destroy the only evidence she possessed of so remarkable a transaction.

But while I cannot refrain from expressing my doubt as to the truth of complainant's case, it is sufficient that as the plea of *plene administravit* was not filed to the declaration of Hyatt, McBurney & Co., when that suit was before the Court, and as it appears from the record that Mrs. Mrs. Wilson had full knowledge of the debt during her husband's life, and that suit had actually been commenced (January 3d, 1868,) against her as executrix before she filed her account (May 14, 1868,) with the Judge of Probate, which was relied upon by her counsel as a final account and discharge, but which appears to be only an annual account and not a final discharge, that the premises in question, whether still belonging to the estate of John Wilson, or to herself in her individual capacity, are liable to the execution in this case.

By the Statute of Uses the conveyance by Mrs. Wilson to her daughter, in trust to and for her own use, was, by operation of the statute, a conveyance to herself; and a trustee or executor, with power of sale, cannot convey to himself, (1 Sugden on Venders, p. 74,) or would the device of passing the title through her daughter have availed, even if the conveyance had not, by the Statute of Uses, put the title into herself at once; for "when a person cannot purchase the estate himself, neither can he through an agent."— *Button and Wife* vs. *Johnson*, 2 Hill Ch., 434.

This was held of a purchaser at open sale; *a fortiori* it will apply to a private one without notice to creditors or others.

It is, therefore, ordered that the temporary injunction heretofore granted in this cause be, and the same is hereby, dissolved; and that the Sheriff do proceed to execute the writ of *fieri facias* issued upon the judgment in this Court in the case of Hyatt, McBurney & Co., against Frances L. Wilson, executrix of John Wilson; and that he do proceed, under said execution, after the usual notice, to sell the premises mentioned in the pleadings for cash; and that from the proceeds thereof he do pay the said judgment, debt and costs of the said Hyatt, McBurney & Co., against the said Frances L. Wilson, executrix of John Wilson; and, also, the costs of the said Hyatt, McBurney & Co., as defendant in these proceedings.

The plaintiffs appealed, because:

1. The property levied upon by the defendants to satisfy their execution against the estate of John Wilson, deceased, is not subject to such levy and sale. Although said property once constituted a part of the estate of John Wilson, deceased, the report of the Referee shows that the same was duly sold by the executrix, Frances L. Wilson, to Jane C. Wilson, and the purchase money therefor duly received by her and applied in payment of the debts of the estate.

2. The Court, in making up its decision, did not confine itself to the facts reported by the Referee, or accept as final the findings of fact by the Referee, although no exceptions were taken by the defendants, or plaintiffs, to the report of the Referee before the final hearing of the cause, nor then, till after the final arguments upon the merits had been submitted. Even then the defendants did not ask that the report be recommitted.

3. The Court erred in dissolving the injunction—the same should have been continued and made perpetual.

*Corbin & Stone,* for appellants.

*McCrady & Son,* contra.

Aug. 14, 1873. The opinion of the Court was delivered by

MOSES, C. J. The bill is filed by Jane C. Wilson, the daughter and her mother, Frances L. Wilson, the widow of John Wilson, to enjoin the sale of certain real estate described in the pleadings, levied on by the Sheriff of Charleston County, under an execution issued on a judgment of the respondents' against the said Frances L. Wilson, executrix of the said John Wilson, on a debt due by the testator. Its whole purpose is to restrain the sale, on the ground that the land is the property in fact of the said Jane C., and not bound by and subject to the judgment. In the language of the bill, " that said lots of land are not, and have not been, since the 21st day of December, 1867, any portion, part, or parcel, or in any way appertained to the estate of John Wilson, deceased." It interposes no equity by which the legal title is affected or qualified, seeks no cancellation or reform of deeds which may cloud the title, asserts neither fraud, accident, mistake or unfair advantage as the claim for relief, but merely seeks the injunction on the ground afore stated.

There is no special prayer but for an injunction " to restrain further proceeding against such lots of land by virtue of the said judgment," and no recital that would justify any relief under the general prayer. " Even when a prayer of general relief is sufficient, the special relief prayed at the bar must essentially depend upon the proper frame and structure of the bill ; for the Court will grant such relief only as the case stated will justify."—Story's Eq. Prac., § 42. And among the principal rules required as to this portion of the bill, Mr. Adams, in his Treatise on Equity, 309, includes as the first, " that it should point out with reasonable clearness what relief is asked." Mr. Kent, in *Wilkins* vs. *Wilkins,* 1 John. Ch., 116, says : " With respect to this point, I apprehend the rule to be, that though the bill contain as usual a prayer for general relief, and also a prayer for specific relief, that the plaintiffs may have other specific relief, *provided it be consistent with the case made* by the bill."

Ch. Dunkin, in *Barr* vs. *Haselden*, 10 Rich. Eq., 58, refers to Ch. Harper, as holding, in regard to the rule, that " where a proper case is made, though the specific relief prayed for cannot be granted, yet if there be a prayer for general relief, the proper relief will be afforded." To authorize, therefore, a grant under the general prayer, where the specific relief cannot be extended, a case must be presented in which, at least, the ground on which it is sought must appear from the pleadings.

Equity may entertain a jurisdiction ancillary to a Court of law, where the party complaining can have no remedy in that Court, or is prevented from making an adequate defense, when brought before it, either by some defect in his title, which equity alone will cure, or some existing impediment which its interposition can alone remove. In the language of the counsel for the appellants, at page 6 of his printed argument, " the general question now before the Court is, whether the property levied upon by the respondents to satisfy their execution against the executrix of the estate of John Wilson, deceased, is subject to levy and sale therefor, upon the facts stated in the report of the Referee." To put the case in the light most favorable to them, suppose both or either had a valid, indefeasible title to the land, clear, in all respects, of any incumbrance by the judgment of the respondents, can a Court of Equity interfere to prevent the sale by the Sheriff? If the land was not that of the estate of the testator when the judgment was recovered against his executrix, the sale would confer no title, and in no event could it be asserted against the said Jane C., except through an action at law. Whether the land is subject to the judgment is a question for that Court, and equity will not interfere to prevent a mere trespass, unless the remedy at law is inadequate, as in waste, nuisance and irreparable mischief. So, if the bill had been framed with a view to reform the deed of September 21, 1867, as is suggested in the argument last furnished on their behalf, and the Court had so ordered, it would be without jurisdiction to grant the injunction. It has not the power to prevent a trespass, save where, in the language of Chancellor Kent, in *Livingston* vs. *Livingston*, 6 John. Ch., 500, referring to *Gartrin* vs. *Asplin*, 1 Mad. Ch. Rep., 150, and cited in *Lining* vs. *Geddes et al.*, 1 McC. Ch., 304, " there is something *particular* in the case, so as to bring the injury under the head of quieting possession, or to make out a case of irreparable mischief, or where the value of the inheritance is put in jeopardy." To

grant an injunction in an application of the character before us would be to determine that the right of title to the land levied on is in one or both of the appellants, which is beyond the power of a Court of Equity.

The question is dismissed.

*Wright*, A. J., and *Willard*, A. J., concurred.